[Civ. No. 30010. Fourth Dist., Div. Three. Mar. 30, 1984.]

DAN CHARLES DUTCHER, Plaintiff and Respondent, v.
A. E. OLSON, as Registrar of Voters, etc., Defendant and Appellant.

1190

**Counsel**

Adrian Kuyper, County Counsel, and Victor T. Bellerue, Deputy County Counsel, for Defendant and Appellant.

Dan Charles Dutcher, in pro. per., for Plaintiff and Respondent.

OPINION

**CROSBY, J.**—Incumbent Joanne Harrold was elected to the Municipal Court, West Orange County Judicial District, in June 1982. The election was nullified after trial of a suit brought by Dan Dutcher, among others, in which the superior court found Harrold violated section 29303 of the Elections Code by knowingly filing a false declaration of candidacy.[1] The court ordered a new election between the defeated candidates, Dutcher and Ronald Nix, in the November 1982 General Election.[2] ■ ■ ■ ■ But Dutcher and Nix, each of whom paid for candidate's statements for distribution in the voter's pamphlet for the June election, were advised by Registrar of Voters A. E. Olson they would not be entitled to candidate's statements for the new election without prepaying the prorated costs[3] or obtaining a superior court order to the contrary. Dutcher petitioned the superior court for relief and obtained a writ of mandate pursuant to section 10015,[4] which ordered the registrar of voters to print and distribute candidate's statements at no cost to Dutcher or Nix.

■ ■ ■ ■ ■ On appeal the county counsel argues a candidate might be entitled to a free statement only if the second election is required due to errors "directly attributable" to the registrar[5] and contends the ruling in *Pierce* v. *Harrold* exonerates his office in this case. From these premises he concludes Dutcher and Nix must underwrite the second candidate's statement. We believe this to be a non sequitur. The question is better posed as

---

[1] All statutory references are to the Elections Code. Section 29303 provides: "Any person who files or submits for filing a nomination paper or declaration of candidacy knowing that it or any part of it has been made falsely is punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the state prison for 16 months or two or three years or by both such fine and imprisonment."

[2] The decision was affirmed on appeal by Division Two of this court. (*Pierce* v. *Harrold* (1982) 138 Cal.App.3d 415 [188 Cal.Rptr. 458].)

[3] Our Supreme Court has determined on two occasions that a county cannot constitutionally require a candidate to prepay. (*East Bay Municipal Utility Dist.* v. *Appellate Department* (1979) 23 Cal.3d 839, 845-846 [153 Cal.Rptr. 547, 591 P.2d 1249]; *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 352 [116 Cal.Rptr. 97, 525 P.2d 1273].) Nevertheless, the statute was amended in 1978 to provide for prepayment of these costs, and one appellate court has ruled the section is constitutional provided there is a procedure to waive the provision for indigent candidates. (*Mackey* v. *Panish* (1980) 106 Cal.App.3d 7 [164 Cal.Rptr. 771].)

[4] Section 10015 reads, "Any voter may seek a writ of mandate alleging that an error or omission has occurred or is about to occur in the placing of any name on, or in the printing of, a ballot, sample ballot, voter pamphlet or other official matter, or that any neglect of duty has occurred or is about to occur. [¶] A peremptory writ of mandate shall issue only upon proof that the error, omission or neglect is in violation of this code or the Constitution and that issuance of the writ will not substantially interfere with the conduct of the election. [¶] Such action or appeal shall have priority over all other civil matters."

[5] This *is* the law with respect to costs in election contests generally when the plaintiff prevails. (§ 20112.) The county pays only where it is responsible for the error which overturns the election. Otherwise, the defendant bears the costs.

follows: As between the candidates and the county, who should bear the burden of attempting to recoup the expense of printing and distributing new statements for the second election from the party at fault? Although the county is "innocent," we see little justice in rewarding a public service with a second billing.[6]

The June election was declared a nullity "in fact and in law." (*Pierce* v. *Harrold, supra,* 138 Cal.App.3d 415, 434.) ■ "Nullity" has been defined as ". . . an act or proceeding in a cause which the opposite party may *treat as though it had not taken place,* or which has absolutely no legal force or effect." (Black's Law Dict. (5th ed. 1979) p. 963, col. 1; italics added.) ■ The practical and legal upshot of *Pierce* can be viewed as a finding the June election did not occur. But the candidates filed statements for distribution in that election and paid their pro rata share of the costs under section 10012, which required the county to include the statements in the voter's pamphlet. It is of no consequence the statements actually appeared; distribution of candidate's statements for an election which is not held through no fault of the candidates can hardly satisfy the registrar's statutory duty under section 10012. In our view, the court's order did not give Dutcher and Nix anything in the November election they were not already entitled to receive. That a promissor is prevented from rendering effective performance by the acts of a third party does not relieve the obligation where it is still possible to perform.

■ Finally, we note neither the California Constitution nor the Elections Code *requires* a public entity to bill candidates for the cost of printing and distributing the statement. The Supreme Court has interpreted section 10012 as merely conferring "a power only to 'bill' at the discretion of the local agency." (*East Bay Municipal Utility Dist.* v. *Appellate Department, supra,* 23 Cal.3d 839, 843.) Its counsel appears to believe the county was somehow legally obliged to pursue this matter against the candidates, despite the registrar's own suggestion they seek relief in the superior court. We hold to the contrary; the absence of any absolute requirement for payment by candidates persuades us the Legislature intended local agencies to retain a degree of flexibility because of the strong public policy to promote fair elections. This was obviously a case where the county could have been more flexible; and, as we noted, the county may have other means of recouping the expense. We do not rest our decision on the registrar's discretion, however; nor could we, as mandate will not issue to compel discretionary acts.

---

[6]Dutcher contends the county *is* partially at fault, since it successfully opposed an election eve writ proceeding brought by Dutcher and Nix to remove Harrold's name from the ballot on the basis it would disrupt the election. Fortunately, there is no need to wrestle with this thorny suggestion.

We hold only that discretion to bill once is not the same as the right to bill twice for the same service.

Judgment affirmed.

Trotter, P. J., and Sonenshine, J., concurred.